## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| MONTGOMERY LAW LLC, | : | |
| 1420 Locust Street, Suite 420, | : | |
| Philadelphia, Pennsylvania 19102, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION NO. _____ |
| v. | : | |
| | : | |
| JACOBSON & JOHN, LLP, | : | **JURY TRIAL DEMANDED** |
| 99 Lantern Drive, Suite 202, | : | |
| Doylestown, Pennsylvania 18901, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## COMPLAINT

Plaintiff, Montgomery Law LLC ("Plaintiff"), by and through undersigned counsel, alleges the claims set forth in this Complaint against Defendant, Jacobson & John, LLP ("J&J" or "Defendant").

## NATURE OF THE ACTION

1.  This Complaint seeks a *de novo* review, pursuant to § 21(b) of the Federal Trademark Act of 1946, as amended (the "Lanham Act), 15 U.S.C. § 1071(b), of a final decision of the Trademark Trial and Appeal Board ("Board") of the U.S. Patent and Trademark Office ("USPTO"); and asserts claims for unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law of the Commonwealth of Pennsylvania.

2.  On November 9, 2023, the Board denied Plaintiff's petition, Cancellation No. 92073600, to cancel U.S. Trademark Registration No. 5545212 (the

"Registration").  The Board Decision is attached to this Complaint, and incorporated by reference herein, as <u>Exhibit A</u>.

3.    The filing of this action is timely under 15 U.S.C. § 1071(b) and 37 C.F.R. § 2.145.

## PARTIES

4.     Plaintiff is a limited liability company organized under the laws of the Commonwealth of Pennsylvania and has a principal place of business at 1420 Locust Street, Suite 420, Philadelphia, Pennsylvania 19102.

5.    Defendant is a limited liability general partnership organized under the laws of the Commonwealth of Pennsylvania and has a principal place of business at 99 Lantern Drive, Suite 202, Doylestown, Pennsylvania 18901.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b), which permits a  party to challenge a final decision of the Board by filing an action in federal district court. This  Court also has subject matter jurisdiction pursuant to 5 U.S.C. § 701 *et seq.* (review of final  agency decision), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks).

7.    Venue in proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

## THE ASSERTED TRADEMARK

8.    Defendant filed to register the mark THE EDUCATION LAWYERS on January 17, 2018, under the International Class 45, describing its services as "legal services."

9.    The mark was registered on August 21, 2018 under U.S. Trademark Registration No. 5545212.

## ENTITLEMENT TO A STATUTORY CAUSE OF ACTION

10.    Plaintiff has an entitlement to a statutory cause of action under Section 14 of the Lanham Act, 15 U.S.C. § 1064, to cancel the Registration. In the decision below, the Board confirmed that Plaintiff has a legitimate interest in the cancellation of the Registration and "is entitled to bring the causes of action herein." *Montgomery L. LLC v. Jacobson & John LLP*, 2023 TTAB LEXIS 484, *9 (Trademark Trial & App. Bd. Nov. 9, 2023) (hereinafter, the "Board Decision").

## FACTUAL BACKGROUND

11.    Plaintiff, a law firm practicing in the field of education law, uses the words "education lawyers" to describe the legal services it offers.

12.    Education law is a recognized, distinct area of law. Lawyers who practice within this field are commonly —unavoidably—referred to as "education lawyers." Defendant's website, as does Plaintiff's, describes lawyers within the firm as "education lawyers."

13.    Numerous law firms in the United States use domain names and general descriptions that include "education" and "lawyer" to describe legal services offered in the field of education law. Such terms are used for advertising as well as for general trade purposes.

14.    Defendant J&J has sought, and continues to seek, to misuse its Registration against Plaintiff, and presumably other legal professionals, as a means to thwart perfectly lawful and commercially valuable descriptive speech – *i.e.*, to use federal registration precisely in the improper manner anticipated and prohibited by courts and the USPTO.

15.    The dispute between the parties began when J&J sent Montgomery Law a cease-and-desist letter demanding that Montgomery Law stop using the domain name

*www.educationlawyers.com* and stop all use of "education lawyers." Preventing Montgomery Law from using "education lawyers" and the domain name *www.educationlawyers.com* would harm Montgomery Law and the public by inhibiting competition in the sale of particular services and by depriving the public of the freedom to use descriptive language to advertise or describe their own services.

16.  J&J wielded its registration like a club to hinder competition despite its trademark being an improper appropriation of generic terms.

17.  After lengthy negotiations with Defendant to come to a resolution on the matter of the parties' respective uses of the disputed mark, which were unsuccessful, Plaintiff initiated a proceeding in the USPTO seeking the cancellation of the Registration, on or about March 6, 2023.

*Arguments at Trial*

18.  Plaintiff 's cancellation suit was and is based on two legal grounds under the Lanham Act.

19.  The first ground is that the term "education lawyers." with or without the article "the" at the beginning, consists of two *generic* terms that refer to the type of service being offered. A term is generic, and not entitled to trademark status, if "it refers to the class or category of goods or services on or in connection with which it is used. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001).

20.  The second, discrete and independent, ground for the cancellation of the Registration is that the mark is merely *descriptive* of a feature of Defendant's services.

21.  The major reasons for not protecting descriptive marks are "(1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the

mark when advertising or describing their own products." *In re Abcor Dev. Corp*., 588 F.2d 811, 813, 200 USPQ 215, 217 (C.C.P.A. 1978) (cited in TMEP 1209).

22.    The mark "THE EDUCATION LAWYERS" is highly descriptive, requiring a higher level of proof to show secondary meaning. *See, e.g., Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1047 (Fed. Cir. 2018). Yet, J&J submitted in support of the Registration only the barest of evidence – an unsubstantiated statement that it has made "substantially exclusive and continuous use" of the words "education lawyers" mark for five years, since at least January 17, 2013.

23.    That statement is false and easily contradicted. Numerous law firms, including Plaintiff, use the terms "education lawyer(s)" to describe legal services offered in the field of education law. Moreover, J&J has never put forward any evidence to show that its use of THE EDUCATION LAWYERS has been continuous and substantially   exclusive.

*Errors by the Board*

24.    The Board's decision denying cancellation of the Registration was plainly based not on the strengths of Defendant's positions under applicable laws, but on the perceived lack of sufficient evidence in the record to support Plaintiff's case.

25.    Some of the Board's exclusions of Plaintiff's evidence were in error.

26.    In one instance, the Board, in a partial grant of Defendant's motion to strike, struck the testimony declaration of Joseph Montgomery and exhibits 1 and 8 thereto, as well as the testimonial declarations of four experts, in each case for "being signed and executed outside of Petitioner's testimony period." Bd. Decision at *5. But Defendant had never moved to strike the declarations on that ground. Instead, Defendant's motion to strike argued that the declarations were out of order because they had been introduced by Plaintiff too late in the proceedings and had not been pre-announced as part of Plaintiff's Initial Disclosures. *See* Respondent's Motion to Strike

(Doc. 26 in record of TTAB).

27.   The Board was entitled to waive the irregularities complained of by Defendant, and effectively did so by rejecting Defendant's grounds for striking the testimonial declarations. Instead, the Board *sua sponte* took issue with the dates on which the subject declarations were executed, and thereby committed error.

28.   Similarly, the Board excluded from evidence the dictionary definitions of "education" and "lawyer" offered by Plaintiff, essentially on the ground that Plaintiff had not authenticated the dictionary entries. "Petitioner references these definitions but gives no indication whether the dictionary entries were retrieved online or from a printed format, has not properly made them of record during its trial period." Bd. Decision at *5. But the Board could have taken judicial notice of those definitions, *sua sponte*, without need of a motion or request from Plaintiff. *See* Fed. R. Evid 201(c).[1]

29.   Plaintiff has substantial additional evidence to submit in favor of its positions on the proposed cancellation—both evidence that was offered in the Board proceeding but not entered into evidence by the Board as part of that proceeding, and evidence that has yet to offered in the cancellation suit.

## FIRST CAUSE OF ACTION

**(Cancellation of Registered Trademark, 15 U.S.C. § 1064)**

30.   Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

31.   The Board Decision should be reversed and vacated; Plaintiff's petition to cancel the Registration should be granted; and an order should be entered directing the USPTO to cancel the Registration in accordance with 15 U.S.C. § 1064.

---

[1] "A court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

32.   Pursuant to 15 U.S.C. § 1071(b) and 37 C.F.R. § 2.145, Plaintiff is entitled to commence a civil action in this District Court within sixty-three (63) days of the date of the decision of the Board. The Board issues its decision on November 9, 2023; accordingly, this action is timely.

33.  Defendant's registration for the mark THE EDUCATION LAWYERS should be canceled pursuant to 15 U.S.C. § 1064 on the grounds that the Board incorrectly determined legal issues, which this court reviews *de novo*, and made incorrect factual findings, which this court reviews in the dual capacities of an appeals court and as the fact finder.

34.  Among other things, the Board made incorrect factual findings and evidentiary rulings that determined the result in the trial proceeding, including those described in paragraphs 26 to 29 *supra.*

35.  Plaintiff has been and will continue to be damaged by the registration of the mark THE EDUCATION LAWYERS and Defendant's use of such mark.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant:

a.  For an order reversing and vacating the Board Decision denying the petition of cancellation (Cancellation No. 92073600), pursuant to 15 U.S.C. § 1071(b);

b.  An order cancelling Defendant's U.S. Trademark Reg. No. 5545212;

c.  For a declaration from this Court that Plaintiff's use of "education lawyers" and its domain name educationlawyers.com do not infringe on the trademark rights or any purported rights of Defendant; and

d.  For such other and further relief as the Court may deem just and equitable.

## SECOND CAUSE OF ACTION

### (Unfair Competition, 15 U.S.C. § 1125(a))

36.   Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

37.   Defendant's use of the trademark THE EDUCATION LAWYERS in connection with Defendant's business and in the manner hereinabove alleged constitutes an effort to deceive the public as to the origin, uniqueness, sponsorship, presentation or approval of Defendant's goods, services, or commercial activities.

38.   Among other things, Defendant used its allegedly superior rights in relation to the phrase "education lawyers" to attempt to monopolize the field for such practitioners in eastern Pennsylvania and establish the notion of a specially qualified bar of "education lawyers," for which only J&J attorneys would presumably qualify. In this and myriad other ways, Defendant attempted to gain unfair competitive advantage over Plaintiff.

39.   Defendant sent Plaintiff a cease-and-desist letter seeking to bring a halt to Plaintiff's lawful use of the domain name *educationlawyers.com*, and the descriptive terms "education" and "lawyers," in the ordinary course of Plaintiff's business.

40.   Defendant has attempted to use the leverage of having a registration for the mark THE EDUCATION LAWYERS to chill Plaintiff's exercise of its right to describe and market its business as it has for not less than thirteen years—in ordinary, descriptive terms, without fear of accusations of trademark infringement.

41.   Defendant's actions have been willful and wanton and have been carried out with a specific intent to injure Plaintiff in the conduct of its business and to gain an unfair competitive advantage over Plaintiff.

42.   Plaintiff has suffered, and will continue to suffer, substantial and irreparable damage, including loss of revenue and consequential damages, as a result of

Defendant's tortious conduct.

43.   Defendant's tortious conduct is a direct and proximate cause of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant:

      a.   For actual damages that Plaintiff is entitled to recover as a result of defendant's unfair competition with Plaintiff;

      b.   For incidental and consequential damages as permitted by law;

      c.   For punitive damages to punish Defendant for unfairly competing with Plaintiff;

      d.   For an injunction preventing Defendant for engaging in. any further unfair competition with Plaintiff; and

      e.   For all such other relief as this Court deems appropriate.

### THIRD CAUSE OF ACTION

**(Pennsylvania Common Law: Unfair Competition)**

44.   Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

45.   Defendant's use of the trademark THE EDUCATION LAWYERS in connection with Defendant's business and in the manner hereinabove alleged constitutes unfair competition against Plaintiff under Pennsylvania common law.

46.   Among other things, Defendant used its allegedly superior rights in relation to the phrase "[the] education lawyers" to monopolize the field for such practitioners in eastern Pennsylvania and establish the notion of a specially qualified bar of "education lawyers," for which only J&J attorneys would presumably qualify. In this and myriad other ways, Defendant attempted to gain unfair competitive advantage over

Plaintiff.

47.    Effectively, Defendant sought to create the appearance of a closed "guild" in which only those practitioners anointed an "EDUCATION LAWYER" and permitted to practice under that banner would appear qualified to represent clients in education cases.

48.    Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (U.S.A.) v. Globus Med., Inc*., Civ. A. No. 04-1235, 2005 U.S. Dist. LEXIS 19962, 2005 WL 2233441, at *8 (E.D. Pa. 2010).

49.    The Pennsylvania common law tort of unfair competition mirrors a claim for federal unfair competition brought under § 43(a) of the Lanham Act. Courts have therefore found that violation of federal unfair competition under the Lanham Act necessarily warrants a finding of unfair competition under Pennsylvania common law. *See Am. Diabetes Ass'n v. Friskney Family Tr., LLC*, 177 F. Supp. 3d 855, 882 n.25 (E.D. Pa. 2016).

50.    Defendant's tortious conduct is a direct and proximate cause of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant:

      a.    For actual damages that Plaintiff is entitled to recover as a result of defendant's unfair competition with Plaintiff;

      b.    For incidental and consequential damages as permitted by law;

      c.    For punitive damages to punish Defendant for unfairly competing with Plaintiff;

d. For an injunction preventing Defendant for engaging in. any further unfair competition with Plaintiff; and

e. For all such other relief as this Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury on the Second and Third Causes of Action, to the greatest extent permitted by law.

Dated:  January 10, 2024                     Respectfully submitted,

**MONTGOMERY LAW LLC**
**Attorneys for Plaintiff**


  /s/ Joseph W. Montgomery
_____
Joseph W. Montgomery
PA Bar I.D. 209527


  /s/ John J. O'Brien
_____
John J. O'Brien
(*Pro hac vice* pending)

**11**