IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MONTGOMERY LAW LLC,<br><br>                              Plaintiff,<br>          v.<br><br>JACOBSON & JOHN, LLP,<br><br>                              Defendant. | CIVIL ACTION<br>NO. 24-108 |

## OPINION

**Slomsky, J.**                                                      **August 14, 2024**

### I.    INTRODUCTION

This case arises from a trademark dispute between two law firms.  On January 10, 2024, Plaintiff Montgomery Law LLC ("Plaintiff") filed a Complaint against Defendant Jacobson & John, LLP ("Defendant") seeking the cancellation of Defendant's trademark THE EDUCATION LAWYERS pursuant to 15 U.S.C. § 1064[1] (Count I).   In addition, Plaintiff alleged that Defendant's use of the trademark results in unfair competition, in violation of 15 U.S.C. § 1125(a)[2]

---

[1]   15 U.S.C. § 1064 provides in pertinent part:

A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he is or will be damaged, including as a result of a likelihood of dilution by blurring or dilution by tarnishment under section 1125(c) of this title, by the registration of a mark on the principal register established by this chapter, or under the Act of March 3, 1881, or the Act of February 20, 1905:

(1) Within five years from the date of the registration of the mark under this chapter.

[2]   15 U.S.C. § 1125(a) provides in pertinent part:

(Count II), and Pennsylvania Common Law (Count III).  (<u>See</u> Doc. No. 1.)  On March 11, 2024, Defendant filed a Motion to Dismiss the Complaint.  (Doc. No. 5.)  On April 8, 2024, Plaintiff filed a Response in Opposition (Doc. No. 8), and on April 15, 2024, Defendant filed a Reply (Doc. No. 9.)  For reasons that follow, Defendant's Motion to Dismiss will be denied.

## II.     BACKGROUND

Plaintiff Montgomery Law is a law firm practicing in the field of education law.  (Doc. No. 1 at 3.)  Plaintiff's online domain name is educationlawyers.com and it uses the words "education lawyers" to describe the legal services it offers.  (<u>Id.</u> at 3-4.)  Defendant Jacobson & John, LLP is a law firm that specializes in special education law.  (<u>See</u> Doc. No. 5-5.)   On January 17, 2018, Defendant filed for registration of the trademark THE EDUCATION LAWYERS ("Defendant's Mark") with the United States Patent and Trademark Office ("USPTO").  (Doc. No. 1 at 2.)  On August 21, 2018, Defendant's Mark was registered under U.S. Trademark Registration No. 5545212. (<u>Id.</u>)

The dispute between the parties began when Defendant sent Plaintiff a cease-and-desist letter demanding that Plaintiff stop using "education lawyers" to describe its services and stop

-------------------

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

using the domain name educationlawyers.com.  (Id. at 3-4.)  After negotiations between the parties over the trademark failed, Plaintiff sought cancellation of the trademark by filing a petition with the Trademark Trial and Appeal Board ("TTAB") of the USPTO.  (Id. at 4.)

On February 28, 2020, Plaintiff filed the Petition to Cancel Defendant's Mark with the TTAB.  (Doc. No. 8 at 1.)  In the Petition, Plaintiff argued that Defendant's Mark was generic and had not acquired sufficient distinctiveness to be entitled to protection as a registered trademark.  (Doc. No. 1 at 4.)  A generic mark is one that consumers perceive as the name of a class and not capable of being distinguished among members of the class.  (Doc. No.1-1 at 19.)  A descriptive mark is one that illustrates only the purpose, quality, or feature of the goods or services.  On November 9, 2023, following a trial, the TTAB denied Plaintiff's Petition to Cancel Defendant's Mark, finding that Plaintiff failed to carry its burden of proving that the Mark was either generic or descriptive.  (Doc. No. 5-1 at 6.)  On December 1, 2023, Defendant filed a Section 15 Affidavit in the USPTO to affirm its continued use of the Mark THE EDUCATION LAWYERS for five consecutive years following the registration.  (Doc. No.1-1 at 6.)[3]

As noted earlier, on January 10, 2024, Plaintiff filed the Complaint against Defendant challenging the TTAB's decision and seeking to have the Mark cancelled.  (See Doc. No. 5-1 at 5.)  On March 11, 2024, Defendant filed the Motion to Dismiss the Complaint (Doc. No. 5) and

---

[3]   A Section 15 affidavit is filed pursuant to 15 U.S.C. § 1065(3). It renders the mark incontestable.  This section provides in pertinent part:

> An affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in commerce, and other matters specified in paragraphs (1) and (2) hereof.

15 U.S.C. § 1065(3).

3

on April 8, 2024, Plaintiff filed a Response in Opposition (Doc. No. 8).  On April 15, 2024, Defendant filed a Reply. (Doc. No. 9.)  Defendant's Motion to Dismiss the Complaint is now ripe for disposition.

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323 (3d Cir. 2022), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> The first step in that process requires an articulation of the elements of the claim. . . .  The second step involves reviewing the complaint and disregarding any "'formulaic recitation of the elements of a claim' or other legal conclusion," . . . as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual[]" . . . .  The third step evaluates the plausibility of the remaining allegations.  That involves assuming their veracity,

4

construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor.

Id. at 327-28 (citations omitted).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.  ANALYSIS

In the Motion to Dismiss, Defendant makes two arguments.  First, Defendant argues that Plaintiff cannot challenge the Mark on "mere descriptiveness" grounds because it has reached "incontestability" status.  (See Doc. No. 5-1 at 7.)   Second, Plaintiff cannot maintain unfair competition claims based on Defendant's use of its registered trademark.  (Id. at 11.)  Each argument will be addressed in turn.

### A.    Defendant's Motion to Dismiss Plaintiff's First Claim will be Denied

First, Defendant argues that Plaintiff cannot challenge the Mark because the Mark reached incontestability status (Count I).  Under the Lanham Act, a mark may become incontestable if it is not successfully challenged within five (5) years of its registration.  (See Doc. No. 5 at 7.)  In response, Plaintiff asserts that: (1) incontestability is an affirmative defense that cannot be adjudicated on a motion to dismiss, and (2) Defendant's registration of the Mark fails the test for incontestability.  (See Doc. No. 8 at 4,7.)

The Lanham Act, 15 U.S.C. § 1051 et seq., describes the process of registering a trademark. Once a trademark is registered, the owner of that mark is entitled to a presumption that the mark is valid.  Id. at § 1057(b).  Pursuant to the Lanham Act, a registered mark may become "incontestable."  Id. at § 1065.  15 U.S.C. § 1065 provides:

> Except on a ground for which application to cancel may be filed at any time under paragraphs (3), (5), and (6) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the owner to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: Provided, That—
>
> (1) there has been no final decision adverse to the owner's claim of ownership of such mark for such goods or services, or to the owner's right to register the same or to keep the same on the register; and
>
> (2) there is no proceeding involving said rights pending in the United States Patent and Trademark Office or in a court and not finally disposed of; and
>
> (3) an affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five

consecutive years and is still in use in commerce, and other matters specified in paragraphs (1) and (2) hereof; and

(4) no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered.

Id.  In sum, "[a] trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration."  Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, n.7 (3d Cir. 1994).  Once a trademark reaches incontestability status "the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115(b).

Here, Defendant maintains that its Mark has reached incontestability status pursuant to 15 U.S.C. § 1065.  On December 1, 2023, following the TTAB's decision, Defendant filed a Section 15 Affidavit with the USPTO affirming continued use of the Mark for five (5) consecutive years following its registration on August 21, 2018.  (Doc. No. 5-1 at 6.)  Defendant maintains that because it "filed the appropriate affidavit asserting the Mark has been in use for over five years since registration, the Mark became incontestable prior to [Plaintiff's] filing of this new action."  (Id. at 11.)

Plaintiff argues to the contrary that incontestability cannot be adjudicated on a motion to dismiss because "a determination of the incontestability of Defendant's exclusive right to use a mark [is] a question of fact not appropriate for determination on a motion to dismiss."  (Doc. No. 8 at 6-7.)  Plaintiff also maintains that its "complaint and its attachments plainly do not contain the factual allegations necessary to validate Defendant's claim of incontestability" and "Defendant's

7

filing of a Section 15 Affidavit, though a matter of public record, is insufficient standing alone, to validate a claim of incontestability."  (Id. at 6.)

Regarding this latter argument, on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Considering the Complaint filed in this case in conjunction with the public records filed with the USPTO, including the Section 15 Affidavit, sufficient information is presented here for the Court to consider Defendant's Motion to Dismiss.

Next, as noted above, Plaintiff argues that if incontestability may be challenged in a motion to dismiss, Defendant's claim to incontestability nevertheless is without merit because (1) Defendant's registration of the mark fails the test for incontestability, (2) Defendant's Section 15 Affidavit is erroneous, and (3) Defendant's interpretation of § 1065(2) runs counter to the statutory scheme for challenges to a registration.  (Doc. No. 8 at 7-11.)

Here, viewing the allegations in the Complaint in the light most favorable to Plaintiff, the issue remains as to whether Defendant's Mark is incontestable and whether Defendant's Section 15 Affidavit is erroneously filed.  Plaintiff maintains that at the time Defendant filed its Section 15 Affidavit, the Affidavit incorrectly certified the requirement in § 1065(2) that no proceeding involving the Mark existed was met.  (Id. at 7.)  Given Plaintiff's allegation that the TTAB maintained jurisdiction over the case and that "Defendant knew well that Plaintiff had been contesting the validity of the [Mark], by formal action, continuously since February 2020, and that

there was no indication that Plaintiff would abandon the contest by failing to timely appeal the [TTAB] decision," the question remains as to whether Defendant's Section 15 Affidavit was filed erroneously.  If it was, incontestability of the Mark is still an open question.

Given this possible result and viewing the facts in the light most favorable to Plaintiff, sufficient facts are alleged to show at this stage of the proceeding that Defendant's Mark did not reach the point of incontestability.  Therefore, Defendant's Motion to Dismiss will be denied on Plaintiff's claim in Count I.

**B.      Defendant's Motion to Dismiss Plaintiff's Second and Third Claims will be Denied**

Next, Defendant argues that Plaintiff's claim for unfair competition pursuant to 15 U.S.C. § 1125(a) (Count II) and claim for unfair competition pursuant to Pennsylvania Common Law for unfair competition (Count III) should be dismissed.  (Doc. No. 5-1 at 11.)  In particular, Defendant maintains that Plaintiff's unfair competition claims must be dismissed because "Plaintiff's Complaint is devoid of allegations concerning any false or misleading statements made by Defendant."  (Id. at 14.)

15 U.S.C. § 1125(a) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

To establish a Lanham Act claim based on a false or misleading representation about a product or service, a plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods travelled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 922-23 (3d Cir. 1990) (quoting Max Daetwyler Corp. v. Input Graphics, Inc., 545 F.Supp. 165, 171 (E.D.Pa. 1982)).

The Pennsylvania common law cause of action for unfair competition is "virtually the same" as the Lanham Act.  Flynn v. Health Advoc., Inc., 169 F. App'x 99, n.3 (3d Cir. 2006). Courts have found that violation of federal unfair competition under the Lanham Act necessarily warrants a finding of unfair competition under Pennsylvania common law.  See Am. Diabetes Ass'n v. Friskney Family Tr., LLC, 177 F. Supp. 3d 855, 882 n.25 (E.D. Pa. 2016).

Here, viewing the facts most favorable to Plaintiff, it has sufficiently alleged that Defendant's use of the Mark, THE EDUCATION LAWYERS, constitutes an effort to deceive the public as to the origin, uniqueness, presentation or approval of Defendant's services.  Plaintiff alleges that Defendant used the Mark to "attempt to monopolize the field for such practitioners in eastern Pennsylvania and establish the notion of a specially qualified bar of 'education lawyers,' for which only [Defendant] would presumably qualify." (Doc. No. 1 at 8.)  In this regard, Plaintiff has sufficiently alleged that Defendant's use of the Mark was made with "the specific intention of branding its own attorneys as the only attorneys qualifying for the description 'education lawyers'"

and may have deceived the general public into thinking Defendant had special association to the designation of education lawyers.  (Doc. No. 8 at 12.)

Thus, at this stage of litigation, and in viewing the facts in the light most favorable to Plaintiff, it has sufficiently alleged the elements of unfair competition under federal and state law. Therefore, Defendant's Motion to Dismiss will be denied as to Plaintiff's claims in Counts II and III.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint (Doc. No. 5) will be denied.  An appropriate Order follows.